IxKUHN, Judge,
dissenting.
I respectfully dissent from the majority’s holding under the facts of this ease.
La. R.S. 15:1171(B) is the enabling statute for the ARP, and provides that the Department of Public Safety and Corrections (“DPSC”) may adopt, in accordance with the Administrative Procedure Act, administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult offenders against DPSC or any of its officials or employees which arise while an offender is within the custody or the supervision of DPSC. Section 1171(B) expressly includes among the illustrative list of complaints and grievances “conditions of confinement.” As the majority duly notes, the thrust of plaintiffs complaint in this matter is that DPSC failed to implement proper procedures for handling incoming and outgoing packages at the Avoyelles Correctional Center (“AVC”). Thus, plaintiffs allegations are clearly directed at the conditions of his confinement.
La. R.S. 15:1172(B) states that no state court shall entertain an offender’s grievance or complaint which falls under the purview of the administrative remedy procedure unless and until the offender shall have exhausted the remedies as provided in said procedure. According to the rules of the ARP,[1] when an inmate has a complaint, he may make a request to a unit head for an administrative remedy to a ^situation arising from policies, conditions, or events within the institution which affect him personally. The unit head, in turn, screens all requests prior to assignment to the first step. Among the express reasons a unit head may deny a request is that “[tjhere has been a lapse of more than 30 days between the event and the initial request.” 17 La. Reg. at 69. Plaintiff acknowledges that at no time did he make a request to a unit head for an administrative remedy to address his grievance.
In Gibson v. Barnes, 597 So.2d 176, 178, (La.App. 1st Cir.1992), this court concluded that although cast as an action in tort, an inmate-plaintiffs claim against a physician was “in reality a grievance against the prison system.” Plaintiff alleged that on four separate occasions the defendant-physician refused to give him a duty status which would have limited the amount of walking or standing that would be required of plaintiff. Defendants urged that plaintiff had abandoned his claim by failing to timely pursue administrative remedies. The Gibson court reasoned that the procedures established in Louisiana for administrative remedies for prisoners provided an effective remedy when the underlying basis for the claim was actually a complaint about prison conditions. Although plaintiff contended that the physician’s denial of duty status constituted a request for and a denial of medical treatment, the Gibson court found that “it was more reasonable to interpret Gibson’s petition as a complaint that the prison administration failed to honor his request to be relieved of his work duties.” Gibson, 597 So.2d at 177.[2]
I disagree with the majority’s reliance on La. C.C. art. 3492, setting forth a one-year prescriptive period for delictual actions, as a basis to support the contention that plaintiff has one year from the date of the action *824 giving rise to his complaint to file his lawsuit. In the case sub judice, although plaintiff has attempted to cast his |3action as one in tort, in reality his complaint is about prison conditions. Plaintiff alleges that AVC is the only correctional facility with a policy that requires the personal property of an inmate to be shipped home while the inmate is in maximum security. Although plaintiff maintains that he has sued the defendants in both their “personal and official capacities,” he alleges defendant Kaylo’s liability is for “drafting and implementing the directives and policies relative to the Mail and Package Room at AVC”; defendant Foster’s liability is for “drafting, implementing and enforcing all directives, policies and regulations relative to the Mail and Package Room at AVC”; and defendant Mitchel’s liability is for “implementing the directives, policies and regulations drafted by defendants Kaylo and Foster” and that she “is also responsible for exercising her own professional judgment as a Correctional Officer in not following illegal directives or policies.... ” These assertions are actually complaints about the directives and policies of the Mail and Package Room at AVC, see Gibson, 597 So.2d at 177-78, and are properly categorized as complaints about the conditions of confinement.
In accordance with § 1172(B), plaintiff was required to exhaust administrative remedies before bringing this action against DPSC and its employees. Whether one uses plaintiffs acknowledgement that he did not pursue administrative remedies, or more equitably, the date he knew or should have known his package was lost (based on the allegations of his petition, no later than June 5, 1995), the failure of plaintiff to ^pursue any administrative remedies whatsoever renders his grievance untimely.[3] For these reasons, I would reverse the trial court’s determination and dismiss plaintiffs petition with prejudice. Accordingly, I respectfully dissent from the majority’s opinion.

. The rules and regulations of the ARP were adopted by DPSC pursuant to La. R.S. 15:1171 and are described and published in the Louisiana Register, Volume 17, No. 1, pp. 68-72 (1991), as § 325 of Title 22 of the Louisiana Administrative Code.

. Although the federal case Martin v. Catalanotto, 895 F.2d 1040, 1042-43 (5th Cir. 1990), relied upon by the Gibson court, was subsequently abrogated, see Marsh v. Jones, 53 F.3d 707, 709 (5th Cir. 1995), the basis of the abrogation is inconsequential to the facts of this case. At the time of the federal court scrutiny of Louisiana's prison administrative procedures, the ARP did not provide an inmate-plaintiff the opportunity to obtain a money judgment within its framework. *824 The ARP has subsequently been amended to expressly allow for a monetary award, and thus, the distinction made in Marsh has no bearing on the facts of this case.

. To the extent that plaintiffs petition states a claim for lost property, we note that La. R.S. 15:1171(B) provides in relevant part:
All ... procedures, including the adult and juvenile offender disciplinary process, promulgated and effective prior to June 30, 1989 shall be deemed to be the exclusive remedy for complaints and grievances to which they apply insofar as federal law allows.
The ARP rules and regulations slate in pertinent part:
There are three procedures already in place within the Corrections Services Institutions, which procedures are hereby specifically and expressly incorporated into and made part of this administrative remedy procedure. These procedures shall constitute the administrative remedies for disciplinary matters, denial of publications, and lost property claims.
a. Disciplinary Process, Appendix A, Disciplinary Rules for Adult Prisoners, as revised.
s¡s :¡: H: is
c. Lost Property Claims, Appendix C, Department Regulation No. 30-22A, as revised. 17 La.Reg. at 68.
Effective February 22, 1993, Department Regulation 30-22A was superceded by Department Regulation No. 10-17 entitled "Disciplinary Rules and Procedures for Adult Inmates, 1st Edition, 1993.” Although Department Regulation No. 10-17 appears to include some modifications to the procedures which were in effect on June 30, 1989, both versions expressly provide that "[a]ll claims for lost personal property must be submitted to the Warden/Superintendent within [ten] days of the discovery of the loss.” Thus, even if we were to assume that on June 5, 1995, plaintiff first discovered his personal property had not reached its destination, his failure to pursue the "exclusive remedy” for a claim for lost property, likewise, requires dismissal of his petition for failing to pursue administrative remedies.